# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **FILTREXX INTERNATIONAL, LLC,** | ) | **CASE NO. 5:12cv58** |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | **JUDGE SARA LIOI** |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION &** |
| **THOMAS TRUELSEN, et al.** | ) | **ORDER** |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court are the following motions: (1) defendants' motion to dismiss for lack of personal jurisdiction and for failure to state a claim upon which relief may be granted (Doc. No. 8); and (2) plaintiff's unopposed motion to amend the complaint (Doc. No. 13). In support of their motion to dismiss, defendants submit the declarations of Thomas Truelsen ("Truelsen"), the president and chief executive officer of Soil-Tek, Inc. ("Soil-Tek"). (Doc. Nos. 8-2, 8-3.) In opposition to the motion, plaintiff submits the affidavit of Rodney Tyler, the managing member and president of Filtrexx International, LLC ("Filtrexx"). (Doc. No. 10-1.) Defendants have filed a reply to the opposition brief, attaching another declaration by Truelsen. (Doc. No. 11-1.)[1] The motions are fully briefed and ripe for disposition. For the following

---

[1] Plaintiff also filed an unopposed motion for leave to file a surreply brief in opposition to defendant's motion to dismiss to address a "narrow issue raised by defendants regarding the Rule 12(b)(6) standard of review and "to rebut inaccuracies" in defendants' reply. (Doc. No. 14.) Without awaiting a ruling regarding leave, plaintiff filed its surreply. (Doc. No. 15.) The Local Civil Rules permit the filing of a motion and memorandum in support, a memorandum in opposition, and a reply memorandum, but do not expressly permit the filing of a surreply. LR 7.1(c), (d) and (e). Because the defendants make new arguments relative to the timing of their alleged misconduct in their reply brief, however, the Court finds good cause for the plaintiff to file its surreply. *See Tackett v. M & G Polymers USA, LLC*, No. 2:07cv126, 2011 WL 1114281, at *3–4 (S.D. Ohio Mar. 24, 2011) (granting plaintiffs' motion for leave to file a surreply to address new arguments, cases, and factual assertions presented in defendants' summary judgment reply memorandum). Accordingly, the Court **GRANTS** plaintiff's motion for leave to file a surreply and plaintiff's surreply (Doc. No. 15) is hereby deemed filed as of May 14, 2012. However, in the future, when seeking leave to file, counsel must attach a copy of the proposed surreply to the motion for leave, await a ruling from this Court, and, if the motion is granted, file the surreply as a separate document.

reasons, defendant's motion to dismiss for lack of personal jurisdiction is **GRANTED**, plaintiff's motion to amend is **DENIED,** and defendant's motion to dismiss for failure to state a claim is **DENIED as MOOT**.

I.      **BACKGROUND**

Plaintiff Filtrexx filed this action on January 10, 2012, against defendants Truelsen and Soil-Tek (collectively, "defendants") and several unnamed "John Doe" defendants. (Doc. No. 1.) The complaint alleges claims for breach of contract, misappropriation of confidential, proprietary and trade secret information, intentional interference with business and contractual relationships, unfair competition, breach of fiduciary duty, trademark infringement, fraud and misrepresentation, patent infringement, conversion, and defamation.

Filtrexx is an Ohio limited liability company that has its principal place of business in Grafton, Ohio. (Doc. No. 1 at 2.) Filtrexx develops, manufactures, and provides products and services used for sediment control, storm water filtration, and bio-filtration in agricultural, horticultural, home, and garden applications. (Doc. No. 1 at 3; Doc. No. 10-1 at 168.) Filtrexx is the owner of several registered trademarks and patents related to its filtration products. (Doc. No. 1 at 4; Doc. No. 10-1 at 168.)

Soil-Tek and Truelsen are Iowa residents. (Doc. No. 8-2 at 134; Doc. No. 8-3 at 138.)[2] Soil-Tek provides erosion and sediment control installation and storm-water pollution-prevention plan, management services across the Midwest. (Doc. No. 8-2 at 135.) Soil-Tek and Truelsen do not have any Ohio offices and, except for a single sale of Soil-Tek manufactured

---

[2] Soil-Tek is wholly owned by Truelsen Blementhal, LLC, an Iowa limited liability company, and has its principal place of business in Iowa. (Doc. No. 8-2 at 134.) Truelsen resides in Ellston, Iowa. (Doc. No. 8-3 at 138.)

garden tubes to an Ohio resident by telephone,[3] Soil-Tek and Truelsen have not supplied goods, provided services or managed any projects in Ohio. (*Id*. at 135-36; Doc. No. 8-3 at 138-39.) Neither Soil-Tek nor Truelsen uses or possesses any Ohio real property or has ever contracted to insure any Ohio person, property, or risk. (Doc. No. 8-2 at 137; Doc. No. 8-3 at 139.)

From 2003 until 2010, Soil-Tek was an exclusive distributor of certain products developed and manufactured by Filtrexx. (*Id*. at 135.) There is no indication in the record as to who initiated the parties' business relationship. In December 2006, Filtrexx and Soil-Tek entered into an Exclusive Distributorship Agreement ("EDA"). (Doc. No. 1 at 5; Doc. No. 10-1 at 169; Doc. No. 8-2 at 135.)[4] Filtrexx drafted the initial version of the EDA and mailed it to Soil-Tek in Iowa for review. (Doc. No. 8-2 at 135.) The parties negotiated the EDA over the telephone, and Truelsen and Soil-Tek executed the EDA in Iowa.[5] (*Id*.)

The EDA granted Soil-Tek the limited right to use Filtrexx's trademarks and trade names and exclusively authorized Soil-Tek to sell and market Filtrexx's products in Iowa and parts of Illinois. (Doc. No. 1 at 5; Doc. No. 10-1 at 169; Doc. No. 8-2 at 135.) The agreement obligated Soil-Tek's employees to attend trainings, including Filtrexx's Certified Installer School and annual certification meetings, and obligated Soil-Tek to sell or purchase at least $100,000 of Filtrexx's products or services annually. (Doc. No. 1-3 at 32, 38; Doc. No. 10-1 at 169.) The EDA provides that upon its termination, Soil-Tek would no longer have the right to use

---

[3] In July 2011, an Ohio woman contacted Soil-Tek by phone and ordered garden tubes manufactured by Soil-Tek, which were shipped to the woman in Ohio from Iowa. (Doc. No. 8-2 at 136.) Truelsen avers that the products sold to the Ohio customer were not Filtrexx products and are not related in any way to the claims asserted by Filtrexx in this action. (*Id*.) Filtrexx does not dispute these contentions.

[4] The EDA is attached as an exhibit to the complaint. (Doc. No. 1-3 at 31.)

[5] Truelsen avers that, although he is a representative and fiduciary of Soil-Tek and executed agreements between Soil-Tek and Filtrexx in that capacity, he, personally, has never had a business relationship with Filtrexx. (Doc. No. 8-3 at 139.)

3

Filtrexx's trade names or to sell its products and must either return or destroy any of its remaining Filtrexx products or materials. (Doc. No. 1-3 at 35.) The EDA further provides that it is to "be construed and enforced in accordance with the laws of the state of Ohio." (*Id*. at 37.)

In addition to the EDA, in September 2007, the parties executed a confidentiality agreement whereby Soil-Tek agreed to protect Filtrexx's confidential information. (Doc. No. 1 at 6.)[6] The confidentiality agreement contains a choice of law provision favoring Ohio law and indicates that Soil-Tek acknowledges that it is "transacting business in Ohio by executing" the agreement. (*Id*.) Further, Soil-Tek agreed to "commence and maintain any action" in connection with the confidentiality agreement within "the boundaries of the U.S. District Court wherein [Filtrexx] or its successor maintains its principal place of business . . . ." (*Id*.)

During the term of the EDA, Soil-Tek placed orders with Filtrexx from Iowa by telephone, facsimile, or email, and paid for those orders by mailing checks to Filtrexx in Ohio. (Doc. No. 8-2 at 135.) The Filtrexx products ordered by Soil-Tek were manufactured in and shipped from Chicago, Illinois and did not pass through Ohio when shipped to Soil-Tek in Iowa. (Doc. No. 11-1 at 273-74.)[7] Soil-Tek did not distribute or install Filtrexx products in Ohio and was prohibited from doing so, as Filtrexx had an EDA with a different company for exclusive distribution and installation in Ohio. (*Id*. at 136.) However, Truelsen did attend three training meetings held in Cleveland, Ohio on January 7-9, 2003, and in Strongsville, Ohio on October 9-11, 2007 and September 22-24, 2009. (Doc. No. 10-1 at 169-70.) Additionally, Truelsen attended a strategic, invitation-only meeting held in Grafton, Ohio on July 7, 2010. (*Id*. at 170.) Filtrexx

---

[6] The confidentiality agreement is also attached as an exhibit to the complaint. (Doc. No. 1-4 at 39.)

[7] Filtrexx avers that the products ordered by Soil-Tek were "packaged and delivered by Filtrexx manufacturing facilities[,]" (Doc. No. 10-1 at 170), but Filtrexx does not indicate where those facilities are located. Filtrexx's sureply does not dispute Soil-Tek's averment that these facilities are located in Chicago.

asserts that, during these trainings or meetings, it provided Soil-Tek and Truelsen with education, advertising programs, product and sales trainings, and sales promotions that were developed in Ohio and were provided for the benefit of Truelsen's and Soil-Tek's business. (*Id*. at 169-70.)

The complaint alleges that, in June 2009, Filtrexx proposed to Soil-Tek an expanded non-exclusive distributor agreement, but that, instead, Soil-Tek terminated the existing EDA.[8] (Doc. No. 1 at 7.) Filtrexx contends that, prior to termination of the agreement, in April 2010, Soil-Tek registered a website that copies one of Filtrexx's products. (Doc. No. 10-1 at 171.) Further, Filtrexx alleges that, after the EDA terminated, Soil-Tek wrongfully failed to return or destroy all of its remaining Filtrexx products, materials, and confidential information and continued to sell and market Filtrexx products in breach of the parties' agreements. (Doc. No. 1 at 7; Doc. No. 10-1 at 169.) Additionally, Filtrexx alleges that Soil-Tek also made material and fraudulent misrepresentations regarding its right to continue to sell Filtrexx products and services; reverse engineered Filtrexx's products; fraudulently misrepresented that other products and materials were Filtrexx's; induced others to sell counterfeit Filtrexx products or to purchase from Soil-Tek instead of Filtrexx; and continued to use Filtrexx's confidential and proprietary information without permission. (Doc. No. 1 at 7-9.) Finally, Filtrexx contends that Soil-Tek marketed its counterfeit filtration products in a national trade publication in August 2011. (Doc. No. 10-1 at 170; Doc No. 10-5 at 188.)

## II.     PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT

---

[8] Truelsen avers, however, in support of Soil-Tek's motion to dismiss, that it was Filtrexx who terminated the EDA with Soil-Tek. (Doc. No. 8-2 at 136.) Filtrexx's opposition to the motion does not contest this fact. Regardless, this factual disagreement is not pertinent to the present dispute regarding personal jurisdiction.

Plaintiff moves to amend the complaint to dismiss without prejudice Count VIII for patent infringement and to remove minor references in the complaint solely related to that claim.[9] The motion is unopposed. "It is well settled that the district court may deny a motion for leave to amend a complaint if such complaint, as amended, could not withstand a motion to dismiss." *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres., Dep't of Hous. & Urban Dev., City of Louisville*, 632 F.2d 21, 23 (6th Cir. 1980) (citations omitted). Here, the proposed amendment offers no new contentions which bear on the Court's analysis of the threshold personal jurisdiction issue raised by defendants' motion to dismiss, which, as discussed *infra*, the Court concludes is dispositive. Accordingly, because the amended complaint does not alter or moot the jurisdictional deficiencies raised by defendants' motion to dismiss, plaintiff's motion to amend is **DENIED** as futile.

## III. PERSONAL JURISDICTION

Defendants' motion to dismiss for lack of personal jurisdiction argues that Filtrexx has failed to satisfy the constitutional due process requirements necessary for the Court to exercise personal jurisdiction over them. Soil-Tek urges that the Court should only consider its post-termination contacts with Ohio, as that is when plaintiff alleges it acted wrongfully and it is from this conduct that plaintiff's claims arise. Defendants contend that all of the alleged wrongful conduct occurred post-termination and that none of the alleged conduct occurred in Ohio. (Doc. No. 8-2 at 136-37; Doc. No. 8-3 at 138-39.) Further, defendants assert that, after the EDA terminated, neither Truelsen nor Soil-Tek had any contact with Ohio or persons or business residing in Ohio with the exception of an isolated and unrelated sale of its own products to a

---

[9] Plaintiff's proposed First Amended Complaint was filed as an attachment to its motion to amend. (See Doc. No. 13-2 at 287.)

woman in Ohio who contacted Soil-Tek by telephone. (*Id*.) Additionally, defendants argue that they have not contractually consented to this Court's exercise of personal jurisdiction over them, nor have they waived any objection thereto. Defendants assert that, to the extent their pre-termination contacts are relevant, those contacts are insufficient to establish personal jurisdiction over them. They claim the contacts are the type of random, fortuitous or attenuated contacts that the Sixth Circuit has held in *Calphalon v. Rowlette*, 228 F.3d 718 (6th Cir. 2000)—a case that defendants assert is virtually identical to this one—were insufficient to support a district court's exercise of personal jurisdiction.

In opposition, Filtrexx argues that defendants' contacts with Ohio are sufficient to support the Court's exercise of general or specific personal jurisdiction over them, as those contacts have been both continuous and systematic by virtue of defendants' lengthy business relationship with Filtrexx from 2003-2010. According to Filtrexx, the EDA and the confidentiality agreement created continuing obligations between it and defendants, which support this Court's exercise of personal jurisdiction over defendants. Filtrexx also argues that defendants agreed that Ohio law would govern any controversy related to either the EDA or the confidentiality agreement, and that they agreed to a forum selection clause, pursuant to which defendants consented to personal jurisdiction and venue in the Ohio federal courts.

## A. Rule 12(B)(2) Standard Of Review

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of cases for lack of personal jurisdiction over the defendant. In considering a properly supported motion to dismiss for lack of personal jurisdiction, a district court has discretion to decide the motion upon the affidavits alone, permit discovery in aid of deciding the motion, or conduct an evidentiary

hearing to resolve any apparent factual questions. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir.1989)). Here, no party has requested further discovery or an evidentiary hearing and this Court finds that neither is necessary for it to determine the issue at hand.

Plaintiff bears the burden of establishing the existence of personal jurisdiction. *Compuserve Inc. v. Patterson*, 89 F.3d 1257, 1262-63 (6th Cir. 1996). In the face of a supported motion to dismiss, a plaintiff may not rest on his pleadings, but must, by affidavit or otherwise, set forth specific evidence supporting jurisdiction. *Theunissen*, 935 F.2d at 1458. Where a district court decides the issue solely on the basis of written materials and affidavits,[10] "the burden on the plaintiff is relatively slight, . . . and the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal[ ] . . . ." *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (internal quotation marks and citations omitted). A plaintiff can meet his burden by "establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (internal quotation marks and citation omitted). When making a personal jurisdiction determination, the district court "must view the pleadings and affidavits in the light most favorable to [the plaintiff] and not consider the controverting assertions of [the defendant]." *Calphalon*, 228 F.3d at 721. This rule "prevent[s] non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts[.]" *Theunissen,* 935 F.2d at 1459.

---

[10] Consideration of these affidavits relating to facts meant to establish the existence of personal jurisdiction, or lack thereof, does not require the Court to convert these motions to dismiss to motions for summary judgment. *See Theunissen*, 935 F.2d at 1458 ("in the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction").

**B.  Consent**

Filtrexx argues that Soil-Tek (and presumably Truelsen) consented to or contractually waived their right to contest this Court's exercise of personal jurisdiction by entering into the EDA or the confidentiality agreement with Filtrexx. The parties' confidentiality agreement states as follows:

> **12. General.** . . . Receiving Party [Soil-Tek] agrees that this Agreement shall be governed and construed in accordance with the law of the State of Ohio, without regard to its choice of law rules. Receiving Party [Soil-Tek] acknowledges that it is transacting business in Ohio by executing this Agreement. Receiving Party [Soil-Tek] further agrees to commence and maintain any action it undertakes in connection with this Agreement in a court of competent subject matter jurisdiction within the boundaries of the U.S. District Court wherein Disclosing Party [Filtrexx] or its successor maintains its principal place of business when Receiving Party [Soil-Tek] commences such action, to which court the parties irrevocably consent to personal jurisdiction and venue. . . .

(Doc. No. 1-4 at 43.) Filtrexx asserts that, by virtue of this clause, defendants plainly gave their irrevocable "consent to personal jurisdiction and venue" in this Court[11] under all circumstances.

In contrast, defendants assert that this clause unambiguously states that Soil-Tek, as the "Receiving Party," consented to this Court's venue and jurisdiction *only when Soil-Tek* "commence[s] and maintain[s] any action it undertakes in connection with [the parties'] Agreement . . . ." Defendants argue they did not agree to this Court's venue and jurisdiction when, as here, *Filtrexx* sues Soil-Tek. Further, they urge that any ambiguity in the parties' contract must be construed against Filtrexx, the drafter. The issue for the Court then is whether

---

[11] It is undisputed that Filtrexx maintains its principal place of business within the boundaries of the Northern District of Ohio.

9

the forum selection clause contained in the parties' confidentiality agreement is applicable in this case.[12]

The requirement that a court have personal jurisdiction over a party is a waivable right. *Preferred Capital, Inc. v. Assocs. in Urology,* 453 F.3d 718, 721 (6th Cir. 2006). The use of a forum selection clause is one way in which contracting parties may agree in advance to submit to the jurisdiction of a particular court. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 n.14 (1985) (personal jurisdiction requirement may be waived through forum selection clause in contract); *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15 (1972) (where forum selection provisions have been obtained through freely negotiated agreements and are not unreasonable and unjust, their enforcement does not offend due process).

Under Ohio law,[13] the interpretation of written contract terms, including the determination of whether those terms are ambiguous, is a matter of law for initial determination by the Court. *Parrett v. Am. Ship Bldg. Co.,* 990 F.2d 854, 858 (6th Cir. 1993) (applying Ohio law). A forum selection clause is part of a contract and the principles of contract interpretation apply, including giving the language its ordinary meaning. *In re Delta Am. Re Ins. Co.*, 900 F.2d 890, 892-93 (6th Cir. 1990). In interpreting disputed contract provisions, the Court should discern the intent of the parties and resolve ambiguities against the drafter. *Id.* "The intent of the parties is presumed to reside in the language they chose to use in their agreement." *Graham v.*

---

[12] The parties do not dispute the validity of the forum selection clause. Indeed, "[s]uch clauses are *prima facie* valid in the commercial context, so long as the clause has been freely bargained for." *Preferred Capital, Inc. v. Assocs. in Urology*, 453 F.3d 718, 721 (6th Cir. 2006) (citation and internal quotation marks omitted).

[13] The agreement contains a choice of law clause, which states: "Receiving Party agrees that this Agreement shall be governed and construed in accordance with the law of the State of Ohio, without regard to its choice of law rules." (Doc. No. 1-4 at 43.) Nevertheless, the Sixth Circuit has noted that Ohio and federal law treat the interpretation of forum selection clauses similarly. *Preferred Capital,* 453 F.3d at 721.

*Drydock Coal Co.,* 76 Ohio St. 3d 311, 313 (1996). Contractual language is ambiguous "only where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations." *Covington v. Lucia*, 151 Ohio App. 3d 409, 414 (Ohio Ct. App. 2003) (quoting *Potti v. Duramed Pharm. Inc.,* 938 F.2d 641, 647 (6th Cir. 1991)). In determining whether contractual language is ambiguous, the contract "must be construed as a whole," *Tri-State Group, Inc. v. Ohio Edison Co.*, 151 Ohio App. 3d 1, 9 (Ohio Ct. App. 2002) (quoting *Equitable Life Ins. Co. of Iowa v. Gerwick*, 50 Ohio App. 277, 283 (Ohio Ct. App. 1934)), so as "to give reasonable effect to every provision in the agreement." *Stone v. Nat'l City Bank*, 106 Ohio App. 3d 212, 221 (Ohio Ct. App. 1995).

   The Court is not persuaded that Filtrexx's interpretation of the forum selection clause is reasonable. First, although defendants indeed contractually acknowledged that they were "transacting business in Ohio by executing [the] Agreement[,]" that clause is ambiguous because it can be given at least two interpretations. It could mean defendants concede that, by virtue of this one instance of executing the Agreement, they "transacted business" in Ohio *once* (i.e., that "it [Soil-Tek] . . . transact[ed] business in Ohio *by executing this Agreement*."), even though Soil-Tek, in fact, signed the agreement in Iowa. Alternatively, it could mean that, by executing the Agreement, defendants concede that they are *generally* transacting business in Ohio.

   The Court believes the first construction is the better interpretation. However, under either construction, the analysis would not be over for purposes of personal jurisdiction. As noted *infra*, although Ohio's long-arm statute is "very broadly worded and permit[s] jurisdiction over nonresident defendants who are transacting *any* business in Ohio[,]" *Ky. Oaks*

*Mall Co. v. Mitchell's Formal Wear, Inc.,* 53 Ohio St. 3d 73, 75 (1990) (emphasis added), the Court's exercise of jurisdiction must still be "proper under the Due Process Clause[.]" *Conn v. Zakharov*, 667 F.3d 705, 711-12 (6th Cir. 2012). "Unlike other jurisdictions, Ohio does not have a long-arm statute that reaches to the limits of the Due Process Clause, and the analysis of Ohio's long-arm statute is a particularized inquiry wholly separate from the analysis of Federal Due Process law." *Id.* at 712. Thus, while the EDA's "transacting business" language arguably constitutes support for plaintiff's assertion that defendants consented to the reach of Ohio's long-arm statute, it does not follow *a fortiori* that defendants also waived their wholly independent due process rights. This issue of personal jurisdiction is discussed more fully below.

Further, Filtrexx asks the Court to read the phrase, "to which court the parties irrevocably consent to personal jurisdiction and venue," independently from the preceding statement regarding Soil-Tek's initiation of litigation. In viewing the provision as a whole, however, it is clear that the parties contemplated that consent to the Ohio federal courts' venue and personal jurisdiction arises only when *Soil-Tek* "commences and maintains" an action in connection with the agreement (so long, of course, as Filtrexx's principle place of business is still in Ohio), rather than when *Filtrexx* does so, as is the case here. Filtrexx could have drafted a provision applicable to litigation it initiated or it could have used language indicating that the parties consented to the jurisdiction of this Court as to *all* disputes arising out of the agreement, but it did not do so. To the extent the forum selection clause is ambiguous, the Court must construe the provision in favor of defendants. *See e.g., Cent. Realty Co. v. Clutter*, 62 Ohio St. 2d 411, 413 (1980) (ambiguous contract terms must be construed against the drafter). Therefore, the Court concludes that Filtrexx has failed to demonstrate that defendants consented to this Court's

12

exercise of personal jurisdiction by executing the confidentiality agreement.

### C.  The Law of Personal Jurisdiction

Plaintiff alleges that subject matter jurisdiction exists in this action based upon federal question and diversity of citizenship. "Where a federal court's subject matter jurisdiction over a case stems from the existence of a federal question, personal jurisdiction over a defendant exists 'if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[ ] due process.' *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992) (internal citations omitted)." *Bird v. Parsons,* 289 F.3d 865, 871 (6th Cir. 2002). When a court's jurisdiction is founded on diversity of citizenship, it can exercise personal jurisdiction over a defendant only if personal jurisdiction is "(1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." *Tharo Sys., Inc. v. Cab Produkttechnik GMBH & Co. KG*, 196 F. App'x 366, 369 (6th Cir. 2006) (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002)). A court may exercise personal jurisdiction over a defendant based upon general or specific jurisdiction. Here, plaintiff asserts that both general and specific personal jurisdiction exists over defendants.

The Sixth Circuit has "recognized that Ohio's long-arm statute is not coterminous with federal constitutional limits." *Calphalon,* 228 F.3d at 721 (noting, "the Ohio Supreme Court has ruled that the Ohio long-arm statute does not extend to the constitutional limits of the Due Process Clause") (citing *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 236 (Ohio 1994) (per curiam)). "Accordingly, 'when Ohio's long-arm statute is the basis for personal jurisdiction, the personal jurisdiction analysis requires separate discussions of whether the defendant is amenable

13

to suit under Ohio's long-arm statute and whether due process requirements of the Constitution are met.'" *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d at 357, 361 (6th Cir. 2008) (citing *Walker v. Concoby*, 79 F. Supp. 2d 827, 831 (N.D. Ohio 1999)).

Ohio's long-arm statute is "very broadly worded and permit[s] jurisdiction over nonresident defendants who are *transacting any* business in Ohio." *Ky. Oaks Mall Co.*, 53 Ohio St. 3d at 75 (emphasis in original).[14] "Of course, if jurisdiction is not proper under the Due Process Clause it is unnecessary to analyze jurisdiction under the state long-arm statute, and vice-versa." *Conn*, 667 F.3d at 711-12 (citation omitted). In their reply, defendants do not rebut Filtrexx's argument that defendants' conduct satisfies Ohio's broadly worded long-arm statute of "transacting any business in Ohio." Ohio Rev. Code § 2307.382(A)(1).[15] Instead, defendants focus solely on whether Filtrexx has met its burden of establishing a *prima facie* showing of personal jurisdiction in light of the requirements of the Due Process Clause. (Doc. No. 11.) Accordingly, the Court will confine its analysis to whether the exercise of personal jurisdiction over defendants in this case comports with due process.

### D.  Due Process Limits on Personal Jurisdiction

---

[14] In *Kentucky Oaks,* the Ohio Supreme Court reversed the lower court's conclusion that there was no personal jurisdiction over Mitchell's Formal Wear ("MFW"). MFW, a Georgia corporation, defaulted on a lease agreement it had with Kentucky Oaks Mall Company, an Ohio corporation. The lease concerned a storeroom located at Kentucky Oaks Mall in Paducah, Kentucky. MFW "negotiated the lease by telephone contact to Ohio with an Ohio-based limited partnership[,]" and "intentionally and voluntarily entered into a ten-year contract by signing the document in Georgia and mailing it to Ohio." 53 Ohio St.3d at 75–76. The lease "create[d] ongoing duties and obligations for the life of the contract." *Id*. at 76. Therefore, "[t]he fact that [MFW] maintained no physical presence in Ohio [did] not preclude a finding that it transacted business in this state." *Id.* The court concluded that MFW's conduct fell "unequivocally within the plain and broad language" of the long-arm statute. *Id.*

[15] Ohio's long-arm statute provides, in relevant part, as follows: "A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's . . . [t]ransacting any business in this state . . . ." Ohio Rev. Code § 2307.382(A)(1).

The minimum contacts test for establishing personal jurisdiction under the due process clause is satisfied either through general or specific jurisdiction. *Conti v. Pneumatic Prods. Corp.,* 977 F.2d 978, 981 (6th Cir. 1992). General jurisdiction is established by a defendant's "continuous and systematic" contacts with the forum state. *Bird*, 289 F.3d at 873. Specific jurisdiction, however, subjects the defendant to suit in the forum state only on claims that arise out of or relate to a defendant's contacts with the forum. *Id.*

### 1. General Jurisdiction

Plaintiff has failed to make a prima facie showing that this Court has general jurisdiction over either Soil-Tek or Truelsen. A court may assert general jurisdiction over an out-of-state corporation if its contacts with the forum state are "continuous and systematic [so] as to render them essentially at home in the forum." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317(1945)) (internal quotation marks omitted). A corporation is "fairly regarded as home" in a forum in which it is domiciled, incorporated, or maintains a principal place of business, or where its "continuous corporate operations within a state are so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Goodyear*, 131 S. Ct. at 2853-54 (citations omitted).

Here, it is undisputed that Soil-Tek is not an Ohio corporation and does not maintain its principal place of business in Ohio. Moreover, Soil-Tek's connections to Ohio, do not rise to the level of "continuous or systematic general business contacts necessary to empower [Ohio] to entertain suit against [it] on claims unrelated to anything that connects [it] to the State."

*Id.* at 2587 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 406, 416 (1984).); *see also, Helicopteros*, 466 U.S. at 415-416 (foreign corporation's contacts with Texas, which consisted of one trip to Texas by its chief executive officer to negotiate service contract, acceptance of check drawn on Texas bank, purchase of helicopter and equipment from Texas company and related training trips, insufficient to support exercise of general jurisdiction).

As for Truelsen, the Court may assert general jurisdiction over a person who explicitly consents to jurisdiction in the forum, resides or is domiciled in the forum, or is physically served with process while present in the forum. *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787 (2011) (citations omitted); *Goodyear*, 131 S. Ct. at 2853-54 ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]") "By contrast, those who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts as a general matter." *J. McIntyre Mach.*, 131 S. Ct. at 2787. In this case, because Truelsen has not consented to Ohio's jurisdiction (as discussed *supra*), is not an Ohio resident, and was not served with process in Ohio, this Court may not exercise personal jurisdiction over him under a general jurisdiction theory.

*2. Specific Jurisdiction*

In *Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374 (6th Cir. 1968), the Sixth Circuit established a three-part test for determining whether specific jurisdiction exists, which incorporates due process concerns:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id.* at 381.

With regard to corporate officers, such as Truelsen, "[j]urisdiction . . . cannot be predicated merely upon jurisdiction over the corporation." *Weller v. Cromwell Oil Co.,* 504 F.2d 927, 929 (6th Cir. 1974) (so holding despite allegations that the corporation was the alter-ego of the individual defendants). "On the other hand, their status as employees does not somehow insulate them from jurisdiction." *Calder v. Jones,* 465 U.S. 783, 790 (1984). The Sixth Circuit has held that:

> [t]he mere fact that the actions connecting defendants to the state were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction over those defendants. Hence, where an out-of-state agent is actively and personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice; i.e., whether [he] personally availed [himself] of the forum and the reasonably foreseeable consequences of that availment.

*Balance Dynamics Corp. v. Schmitt Indus. Inc.*, 204 F.3d 683, 698 (6th Cir. 2000).

    a.  <u>Purposeful Availment</u>

The purposeful availment requirement is the "sine qua non" for personal jurisdiction. *S. Mach. Co.*, 401 F.2d at 381–82. The requirement is satisfied when the defendant's contacts with the forum state "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State," and when the defendant's conduct and connection with the forum are such that he "should reasonably anticipate being haled into court there." *CompuServe*, 89 F.3d at 1263 (citations omitted); *Burger King*, 471 U.S. at 473 ("parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities") (internal quotation marks and citation omitted). In other words, there must be

17

"some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denkla*, 357 U.S. 235, 253 (1958). This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, . . . or of the 'unilateral activity of another party or third person[.]'" *Burger King*, 471 U.S. at 475 (internal citations omitted).

The Sixth Circuit has held that when a plaintiff alleges a contractual relationship with an out of state defendant, the Court's focus in determining personal availment should be on the "*quality* rather than the *quantity* of the contacts . . . [or] [the] *duration* of the [parties'] relationship." *Calphalon*, 228 F.3d at 722. "'[P]rior negotiations and contemplated future consequences, along with the terms of the contract and [the] parties' actual course of dealing' must be considered to determine whether 'the defendant purposefully established minimum contacts within the forum.'" *Id.* (quoting *Burger King,* 471 U.S. at 479).[16] The presence of a choice of law provision favoring Ohio in the parties' agreement is not dispositive of the Court's personal jurisdiction over defendants. *Calphalon*, 228 F.3d at 722–23 (concluding that, although

---

[16] Defendants argue that the Court's purposeful availment analysis should be confined to "only [those] relevant contacts between [the] non-resident defendants and the forum state . . . that give rise to the plaintiff's cause of action." (Doc. No. 11 at 264-65.) Defendants contend that all of the alleged wrongful conduct in this case occurred after the EDA terminated and, thus, the Court should only look to defendants' post-termination contacts with Ohio to determine whether defendants purposefully availed themselves of the privilege of acting or causing consequences in Ohio. Defendants, however, have put the proverbial cart before the horse. Defendants' "post-termination contacts" argument is unsupported and misplaced at this stage of the specific jurisdiction analysis, which focuses on the quality of defendant's contacts with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). "The sufficiency of the connection between the contacts and the cause of action is explored under the 'arises from' *Mohasco* factor discussed" at the second stage of a court's specific jurisdiction analysis. *CJ Advertising, LLC v. Whitehardt, Inc.*, No. 3:10-0214, 2010 WL 3260068, at *5 (M.D. Tenn. Aug. 18, 2010) (declining invitation to cabin purposeful availment analysis to the connections between plaintiff's specific causes of action and defendant's contacts with forum state). Consequently, in determining whether defendants purposefully availed themselves of the privilege of acting in Ohio, the Court will consider both defendants' pre-termination and post-termination contacts with Ohio.

defendant was aware of choice of law provision selecting Ohio law as governing law, this knowledge alone was insufficient to confer jurisdiction).

In *Calphalon*, the Sixth Circuit found, on facts very similar to the facts presented here, that "the actual course of dealings between the parties [demonstrated] that [defendant's] contacts with Ohio were purely fortuitous and attenuated[,]" and did not rise to purposeful availment. *Calphalon*, 228 F.3d at 723. Calphalon was an Ohio corporation. *Id.* at 720. Defendant Rowlette was a Minnesota corporation and did not own any property in Ohio. *Id.* The parties entered into a series of agreements by which Rowlette served as an exclusive manufacturer's representative for Calphalon in Minnesota, Iowa, North Dakota, South Dakota and Nebraska. *Id.* Rowlette communicated with Calphalon through letters, faxes and telephone calls to Ohio. Rowlette made two visits to Ohio: the first for a mandatory sales meeting, and the second for a tour of Calphalon's facilities. The final agreement between the parties provided that "this Agreement shall be interpreted under the laws of the State of Ohio." *Id.* Through a letter sent to Ohio, Rowlette claimed breach of contract, and Calphalon filed suit for declaratory judgment. *Id.* at 721.

The Sixth Circuit noted that "the mere existence of a contract between Rowlette and an Ohio citizen for seventeen months is insufficient to confer personal jurisdiction over Rowlette." *Id.* at 722. The court explained that the focus should be on the quality of the parties' relationship, rather than the duration of the relationship. *Id.* In this vein, the court noted that Rowlette's obligations under the agreement were to be performed outside of Ohio, and Rowlette was not seeking to exploit a market for Calphalon's products in Ohio. *Id.* The court explained that these facts did not support jurisdiction:

> In *Kerry Steel Inc. v. Paragon Industries, Inc.*, 106 F.3d 147, 151 (6th Cir. 1997), we held that an out-of-state defendant-buyer did not purposefully avail itself of the benefits and protections of the forum state's laws because, in part, no facts connected the subject matter or performance of the contract at issue to the forum state. Furthermore, we held that any negative economic effect on the in-state plaintiff-seller did not create a determinative impact on the state economy, as "'the locus of such a monetary injury is immaterial, as long as the obligation did not arise from a privilege the defendant exercised in the forum state.'" *Id.* (quoting *LAK,* 885 F.2d at 1303).

*Id.* The court also noted that Rowlette's communications and visits to Ohio resulted not because Rowlette chose to create continuous and substantial consequences in Ohio, but because Calphalon chose to be headquartered there. *Id.* at 723. The court also stated, "[a]rguably, Rowlette would have served as Calphalon's representative in the designated states, regardless of Calphalon's base of operation." *Id.* The court concluded, "Rowlette's contacts were precisely the type of 'random,' 'fortuitous,' and 'attenuated' contacts that the purposeful availment requirement is meant to prevent from causing jurisdiction." *Id.*

The court then noted that the "arising from" requirement under the second prong "is satisfied when the operative facts of the controversy arise from the defendant's contacts with the state." *Id.* (citing *S. Mach. Co.*, 401 F.2d at 384). In addition, because the defendant's connection with Ohio was not substantial, as required by the third prong, "it is necessary for the plaintiff to demonstrate that the facts at issue actually occurred in the forum state." *Id.* at 724 (citing *S. Mach. Co.*, 401 F.2d at 381).

The Court finds that defendants' contacts with Ohio and defendants' conduct and connection are indistinguishable in any meaningful way from those in *Calphalon*. Truelsen declares, and Filtrexx does not dispute, that defendants did not conduct business in Ohio; did not contract to supply services or goods in Ohio; did not derive substantial revenue from goods used

20

or consumed or services rendered in Ohio; do not own real property in Ohio; and did not contract to insure any risk in Ohio. When negotiating the EDA, no Soil-Tek representative traveled to Ohio and the agreement was executed by Soil-Tek in Iowa.[17] Further, as in *Calphalon*, the agreement here involved subject matter existing outside the forum state: the exclusive distribution of plaintiff's products in Iowa and Indiana. "The defendant[s] [were] not attempting to 'exploit any market for [their] products' in the state of [Ohio], but rather had contact with the state only because the plaintiff chose to reside there." *Id.* at 722–23 (quoting *Int'l Techs. Consultants v. Euroglas,* 107 F.3d 386, 395 (6th Cir. 1997)). Indeed, the fact that Soil-Tek was required to communicate with Filtrexx in Ohio is not proof that Soil-Tek "purposefully availed" itself of the Ohio forum. *See, Calphalon,* 228 F.3d at 723 ("[defendant's] phone, mail, and fax contact with [plaintiff] in Ohio and [defendant's] physical visits there occurred solely because [plaintiff] chose to be headquartered in Ohio, not because [defendant] sought to further its business and create 'continuous and substantial' consequences there.") Moreover, while Truelsen did attend four separate training sessions or meetings in Ohio over a seven-year period, it is likely defendants would have attended those seminars wherever Filtrexx had chosen to locate its "base of operation."[18] *Calphalon*, 228 F.3d at 723; s*ee also, Ashton Park Apartments, Ltd. v. Lebor,* 252 F. Supp. 2d 539, 543 (N.D. Ohio 2003) (the purposeful availment requirement is met "when the defendant's contacts with the forum state 'proximately result from actions by the

---

[17] These facts further illustrate the ambiguity of the language of the forum selection clause discussed *supra*. Even though Soil-Tek purportedly "acknowledge[d] that it is transacting business in Ohio by executing this Agreement[,]" these facts suggest that this was not meant to be a *general* acknowledgment in this regard, nor was it meant to serve as a waiver of Soil-Tek's due process rights.

[18] Indeed, Filtrexx admits that Truelsen also attended Filtrexx training and certification seminars held in Texas, Arizona and Florida. (Doc. No. 10-1 at 169.) Again, this was a result of *Filtrexx's* choice to hold those seminars in these locations and not because Soil-Tek or Truelsen sought to further their business in those forums.

21

defendant himself that create a 'substantial connection' with the forum state.'") (quoting *Neogen Corp.,* 282 F.3d at 889).[19]

       Similarly, there is no evidence that any of the alleged wrongful conduct at issue in this case occurred in Ohio, let alone that those activities had any connection with Ohio. *Calphalon*, 228 F.3d at 724. Defendants' advertisement in a national trade journal, taken alone, does not rise to the level of purposeful availment in Ohio. *See Bridgeport Music, Inc. v. Still N the Water Publ'g*, 327 F.3d 472, 481 n.10 (6th Cir. 2003) (taking no position whether "nationwide advertising is sufficient for a finding of purposeful availment," but noting that other circuits have found it insufficient) (citations omitted). Further, although the operation of an internet website can constitute purposeful availment, plaintiff has failed to offer any evidence that Soil-Tek's "website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Bird*, 289 F.3d at 874 (citation and internal quotation marks omitted). Nor has plaintiff made any allegation that defendants' advertisement and website have generated any business connection between defendants and Ohio. Certainly, the monetary effects of defendants' conduct are felt in Ohio; however, "[m]onetary injury to the in-state plaintiff is immaterial as long as the obligation did not arise from a privilege that the defendant exercised in the forum state . . . [or so long as the defendant] was not attempting to exploit the state's market,

---

[19] Moreover, as in *Calphalon*, it is not clear in this case who initially reached out to whom to establish the parties' business relationship. If Soil-Tek sought to become a distributor for Filtrexx in Ohio, that might constitute the very sort of "reach[ing] out beyond one state [to] create continuing relationships and obligations with citizens of another state" that the Court in *Burger King,* 471 U.S. at 473, found sufficient to establish personal jurisdiction in the context of interstate contractual obligations. *Accord LAK, Inc. v. Deer Creek Enters.,* 885 F.2d 1293, 1300 (6th Cir. 1989); *see also Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998) (when "a nonresident defendant transacts business by negotiating and executing a contract via telephone calls and letters to an Ohio resident, then the defendant has purposefully availed himself of the forum by creating a continuing obligation in Ohio"). But the record simply does not support this and the burden is on Filtrexx to show that defendants "purposefully" availed themselves of this forum.

but rather had contact with the state only because the plaintiff chose to reside there." *Paglioni & Assocs., Inc. v. WinnerComm, Inc.*, No. 2:06-cv-00276, 2007 WL 852055, at *7 (S.D. Ohio Mar. 16, 2007) (citing *Calphalon*, 228 F.3d at 722-23; *Kerry Steel, Inc.*, 106 F.3d at 151).

   Finally, with regard to Truelsen, in *Balance Dynamics,* the Sixth Circuit stressed that "'jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation,'" and that courts may exercise personal jurisdiction over corporate officers where the officers were personal, active participants in allegedly tortious or violative conduct. 204 F.3d at 698 (citing *Welle v. Cromwell Oil,* 504 F.2d 927, 929 (6th Cir. 1974)). Further, "[t]he fiduciary shield doctrine generally prevents the exercise of personal jurisdiction over a corporate fiduciary whenever an out-of-state individual's contacts with the forum state occur by virtue of his or her acts as a fiduciary." *MMK Group, LLC v. SheShells Co., LLC*, 591 F. Supp. 2d 944, 953 (N.D. Ohio 2008) (citing *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 902 (2d Cir. 1981)). Here, there has been no showing of active, personal participation by Truelsen in the allegedly tortious conduct. Rather, Truelsen's contacts with Ohio arise strictly from his representative capacity for Soil-Tek. Consequently, plaintiff has failed to show that Truelsen purposefully availed himself of the privilege of acting in Ohio.

   The Court concludes that defendants' contacts are too "random, fortuitous, and attenuated" to permit a finding of purposeful availment here and, therefore, Filtrexx has not established the first prong of the test set forth in *Southern Machine.* As a result, analysis of the second and third prongs is unnecessary. *See LAK, Inc. v. Deer Creek Enter.*, 885 F.2d 1293, 1303 (6th Cir. 1989) ("The plaintiff having failed to pass the 'purposeful availment' test, we need not dwell on the other criteria of *Mohasco Industries;* each criterion represents an independent

requirement, and failure to meet any one of the three means that personal jurisdiction may not be invoked.")

## IV.    CONCLUSION

For the reasons discussed herein, because plaintiff has failed to establish a *prima facie* showing of personal jurisdiction over defendants, defendants' motion to dismiss for lack of personal jurisdiction is **GRANTED**. Further, plaintiff's motion to amend is **DENIED** as futile and defendants' motion to dismiss for failure to state a claim is **DENIED as MOOT**. This case is **DISMISSED**.

**IT IS SO ORDERED**.

Dated: February 13, 2013

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**